OSCAR OLSON, for Himself and All Others Similarly Situated, Appellant, v. M. A. ERICKSON, Respondent.

(217 N. W. 841.)

**Statutes — statutes should be interpreted in harmony with title of act.**

1. An act of the legislature is to be interpreted. in the light of its title, and

---

Note.—(1) Title of statutes as an element bearing upon their construction, see annotation in 37 A.L.R. 934, 938; 25 R. C. L. 1031 et seq.; 3 R. C. L. Supp. 1439; 4 R. C. L. Supp. 1617; 5 R. C. L. Supp. 1361; 6 R. C. L. Supp. 1500.

where an act is subject to two interpretations, one of which would extend the provisions of the act beyond the range stated in the title so as to include subjects not germane thereto, that interpretation will, be adopted which is in harmony with the title of the act.

**Public utility — certificate of public convenience and necessity does not apply to utility granted a franchise by city within year before taking effect of statute.**

2. Chapter 235 of the Session Laws of 1927 of the state of North Dakota examined and held not to apply to a public utility possessing a franchise granted before the time said law came into effect when said franchise was granted within a year prior to the coming into effect of the law.

Opinion filed January 21, 1928.    Rehearing denied February 24, 1928.

Constitutional Law, 12 C. J. § 177 p. 760 n. 57; § 220 p. 787 n. 96; § 222 p. 795 n. 33.   Electricity, 20 C. J. § 23 p. 321 n. 39.   Statutes, 36 Cyc. p. 1133 n. 91.

Appeal from the District Court of Ward County, *Lowe,* J.
Affirmed.

*Nestos, Herigstad & Stenersen,* for appellant.

"Where defendants come to a hearing upon the merits, it is too late for them to say that plaintiffs have an adequate remedy at law where no such objection to the jurisdiction of the court was raised in the answer." Morris Canal v. Jersey City, 12 N. J. Eq. 252; Holmes v. Jersey City, 12 N. J. Eq. 299.

"The general provision in municipal charters authorizing municipal corporations to contract and be contracted with does not delegate beyond the state's control the power to fix public service rates." Bentwood v. Public Serv. Commission (W. Va.) L.R.A.1915C, 261, 83 S. E. 295.

*W. H. Adams* and *Harold B. Nelson,* for respondent.

"A franchise is a contract between the state and the grantee whether conferred directly by the state or through some instrumentality or agency created by the state." 12 R. C. L. 179.

A franchise granted by a city in this state to an electric utility company is a contract. Section 139 of the state Constitution specifically reserves to a city the authority to grant such a franchise. A franchise so granted which fixes the rate to be charged by the utility company to the city for the use of electric current by the city itself is a valid exercise of power by the city. Such provision in the franchise was part of the

contract which could not be impaired by later legislation. Western Electric Co. v. Jamestown, 47 N. D. 157, 181 N. W. 363.

"While there is no precise limits to the police power, it is not, however, without its limitations, since it may not unreasonably invade private rights, or violate those rights which are guaranteed under either Federal or state Constitutions." 6 R. C. L. 195.

*T. C. Madden* and *John Thorpe,* Assistant Attorneys General, on behalf of the Board of Railroad Commissioners, amici curiæ.

"An injunction should not be granted to restrain the violation of any right whether there be a statutory right or not, if the remedy provided by statute is an adequate one." 22 Cyc. 774.

"Where the state has provided a remedy before the railroad commission, for an attempt by a street railway company to enforce unreasonable and improper regulations, the court must yield the prior right of determination to such tribunal." Campbell v. Milwaukee (Wis.) 6 A.L.R. 628, 170 N. W. 937.

"The granting of a right to construct and operate a light and power plant in fact conveys no other right than the right to use the streets and public grounds." Bartlesville Electric Light & P. Co. v. Bartlesville Interurban R. Co. 29 L.R.A.(N.S.) 77, 109 Pac. 228.

"The authority of the legislature, in the exercise of its police powers, cannot be limited or restricted by the provisions of contracts between individuals and municipal corporations." 6 R. C. L. 200; Salt Lake City v. Utah Light & Traction Co. 3 A.L.R. 715, 173 Pac. 556.

BURR, J. Plaintiff seeks to enjoin the defendant from proceeding with the construction of an "electric light and power plant and distributing system" in the city of Kenmare. It is his claim that the defendant has not obtained from the board of railroad commissioners of this state the certificate "that public convenience and necessity require or will require such construction and operation" specified in § 1 of Chapter 235 of the Sess. Laws of 1927. It is the claim of the defendant that such certificate is not required in this case because said chapter 235 of the Sess. Laws 1927 did not go into effect until July 1, 1927 and the defendant had obtained his franchise from the city of Kenmare on June 6, 1927, and the statute should not be given a retrospective application; that the title of said act shows it was intended to apply to pub-

lic utilities whose franchise had been granted after July 1, 1927 or which had failed for more than one year to exercise their rights under a franchise granted prior to July 1, 1927, and to extend the operation of the statute to cases such as his would violate § 61 of the Constitution of this state; that the law is unconstitutional because it violates § 139 of the Constitution of this state. The trial court found "that prior to the institution of this action (Sept. 21, 1927) the defendant herein commenced the construction of an electric lighting plant and distributing system within the city of Kenmare, etc." and the findings in the case are based upon a stipulation of facts—no other proofs being presented. The stipulation of facts contains the following:

"That the defendant did not, prior to the first day of July 1927, commence any construction or operation under the franchise described in the second paragraph of said complaint except that, prior to the first day of July 1927, the defendant entered into negotiations and contracts for the purchase of electric power and generating equipment to furnish electricity to the city of Kenmare, and its inhabitants as contemplated in said franchise."

The court denied the injunction and plaintiff appeals.

Upon the application of the board of railroad commissioners, through its counsel Mr. John Thorpe, a brief on behalf of the board of railroad commissioners was filed as amicus curiæ. This brief states that:

"Two interested persons filed a petition with the Commission, praying for the issuance of an order to cease and desist in conformity with § 3 of said chapter 235 against the respondent M. A. Erickson and upon said petition, the board of railroad commissioners set a day of hearing at which time said M. A. Erickson appeared and testified in his own behalf. After a full hearing, the board found that construction had been commenced after July 1st and issued its order. On the 8th day of December 1927 an appeal from the order was taken to the district court of Burleigh county, North Dakota."

For this reason it continues:

"The commission is interested in the decision to be made, and more particularly the opinion to be written in this case because the litigants in the action, seek to place in issue the constitutionality of the foregoing law and further seek to obtain from the court, a definition of the word 'construction' as used in the law, upon facts stipulated between the

parties, and which facts may or may not correctly set forth conditions as they actually are."

The board of railroad commissioners is a part of the executive department of this state. It is a constitutional board and is empowered by law to take charge of and pass upon questions involving public utilities, and if the constitutionality of this statute is to be determined by this court the board should be heard. For this reason the brief was permitted to be filed. It is apparent however, that if the defendant commenced construction before the first day of July 1927, or if the law does not apply to him because he was operating "under any franchise heretofore granted" and therefore had one year from the granting to commence operation, constitutionality of the law as a whole would not be involved and the board of railroad commissioners would not be concerned with the subject-matter of this action.

It is conceded that the city of Kenmare adopted an ordinance on the 6th day of June 1927 granting to the defendant herein a franchise to "use the streets, alleys and public grounds of said city for the purpose of constructing and maintaining such distribution system and transmission lines," that such ordinance was accepted by the defendant and that prior to July 1, 1927, he proceeded to act thereunder to the extent of entering into negotiations and contracts for the purchase of the necessary equipment to erect and maintain buildings for the distribution system and to exercise the rights granted under the franchise.

We are concerned with the construction of §§ 1 and 2 of the act. The defendant is a public utility as defined by the statutes of this state and it must be clear that section 2 of the statute has no application to him. Such section reads as follows:

"No such public utility shall henceforth exercise any right or privilege under any franchise or certificate hereafter granted, or under any franchise heretofore granted, the exercise of which has been suspended or discontinued for more than one year, or if within one year from the granting of such franchise it has not commenced construction under such franchise, without first obtaining from said board of railroad commissioners a certificate that public convenience and necessity require the exercise of such right or privilege."

The law went into effect July 1, 1927. The defendant is seeking to exercise a "franchise heretofore granted" and the exercise of such

franchise has not "been suspended or discontinued for more than one year," and it is apparent that he has "one year from the granting of such franchise" to commence construction under the franchise. It is only when such year has passed without commencing construction that he requires to have the certificate in order to exercise his rights or privileges.

It is the contention of the plaintiff and of the board of railroad commissioners that § 1 is applicable in this case. Such section reads as follows:

"No public utility, as defined in § 4609c2, Supplement to the 1913 Compiled Laws of North Dakota, shall henceforth begin the construction or operation of a public utility plant or system, or of any extension thereof, without first obtaining from the board of railroad commissioners of this state a certificate that public convenience and necessity require or will require such construction and operation; provided, that this section shall not be construed to require any such public utility to secure such certificate for an extension within any municipality or district within which it has heretofore lawfully commenced operations, or for an extension within or to territory already served by it necessary in the ordinary course of its business, or for an extension into territory contiguous to that already occupied by it and not receiving similar service from another utility, or for which no certificate of public convenience and necessity has been issued to any other public utility; but if any public utility in constructing or extending its line, plant or system, unreasonably interferes with or is about to unreasonably interfere with the service or system of any other public utility, the board of railroad commissioners on complaint of the public utility claiming to be injuriously affected may, after notice and hearing, make such order and prescribe such terms and conditions as are just and reasonable."

The plaintiff and the board of railroad commissioners, say we must distinguish between the purpose of § 1 and the purpose of § 2 of the Act; that the former is concerned with the *"construction and operation* of a public utility plant or system" and the latter with the exercise of a right or privilege under a franchise; that while under the peculiar circumstances of this case the defendant may not be prevented from exercising rights or privileges under his franchise (it merely

giving him the right to go upon and use the streets, alleys, etc. charge rates not to exceed a certain sum, etc.) because he does come within the classes specified in § 2, yet he may be prevented from constructing and operating a plant in accordance with the purpose of § 1. They say no public utility "shall henceforth begin the construction or operation" of a system or an extension without securing the certificate and that this includes the defendant because the only exception to this rule applicable to this case is when the defendant "has heretofore lawfully commenced operation"—commenced operation before July 1, 1927— and that the defendant has not done so.

The defendant says that this law does not apply to him; that while the terms of § 1 appear to be general, nevertheless they cannot be held to apply to those having their franchises granted before the law went into effect as the general terms of the statute are limited by the language of the title; and that the title clearly limits the act to those utilities where the franchise is "hereafter granted," that is, granted after the law came into effect; or to cases where the franchise has been "heretofore granted," that is, has been granted before the law came into effect, and more than one year has passed from the granting of the franchise before operations were commenced; or to such cases and the system had "been suspended or discontinued for more than one year." He further claims that in any event he commenced operations before the first day of July.

The title reads as follows:

"An act requiring public utilities to obtain from the board of railroad commissioners certificates of public convenience and necessity before beginning the construction or operation of public utility plants or systems or the exercising of any rights or privileges under any franchise or certificate hereafter granted, or under any franchise heretofore granted, the exercise of which has not been commenced within one year from the granting thereof, or has been suspended or discontinued for more than one year, and prescribing the procedure to be followed in such matters."

The controversy over the intent of the statute arises from differences in construction of the title of the act. The plaintiff and the board of railroad commissioners say that the last few lines of the title beginning with the words "the exercise of which has not been commenced within

one year" etc. refer only to "the exercise of any rights or privileges under any franchise" whereas the defendant says that these last few lines beginning "exercise of which has not been commenced within one year, etc." apply to the exercising of any "rights and privileges under any franchise" and also to the first part of the title where it refers to "beginning the construction or operation of public utility plants or systems." In other words the defendant says that these limitations of time apply to all cases where the law requires the issuance of certificates, and are exceptions to all of these cases. It is argued by the board of railroad commissioners that if the legislature intended this limitation of time to apply to both classes of cases there would have been no necessity for having two sections, §§ 1 and 2 would be combined; and the fact that the bill provides these two sections shows the legislature intended to make two classifications, and as the time limitation in the title is subsequent to the portion dealing with franchise and found only in § 2 therefore it applies only to the second class, and the only exceptions as to the first class is the public utility which has already begun the construction and operation; that having begun or commenced the construction or operation it would be unfair to require a certificate; but not having commenced operation the purposes of the law is served by putting the new utility under the control of the board of railroad commissioners.

An examination of the title shows that the provision referring to the "beginning the construction or operation" and the provision referring to "exercising of any rights or privileges in any franchise" are in the same sentence without any punctuation marks. Both of these refer to two classes of cases in point of time "hereafter granted," and "under any franchise heretofore granted." The title is intended to require the issuance of a certificate for the construction or operation of public utility plants under franchises hereafter granted, and the regulation of exercise of franchises heretofore granted when these franchises had been dormant for a certain length of time. In other words the act intends to require a certificate for the construction and operation of a public utility under franchise hereafter granted, and to control and regulate public utilities in cases where franchise was heretofore granted, but where the franchise has remained unused for one year or more. The title of the act shows that it divides the public utilities affected into two

great classes depending on the time when the franchise was granted. The first class includes those public utilities which seek to construct or operate a plant or exercise "rights or privileges under any franchise or certificate hereafter granted." Clearly the defendant does not come within that class as his franchise was granted before the first day of July 1927. The second great class of public utilities comprises those where the franchise has been "heretofore granted" that is granted before the first day of July 1927. But it is not as to all of these utilities that the act applies, only to two divisions of them—those where the construction or operation or the exercise of the franchise has not commenced within one year from the granting thereof," and those where though rights under the franchise had been exercised within one year from the granting of the franchise and the plants constructed and operated yet through the lapse of time the construction or operation of the plant and the rights and privileges granted under the franchise have "been suspended or discontinued for more than one year." It is clear the defendant does not come under either of these classes. While his franchise has been granted prior to the first day of July yet he has one year from the date of the franchise in which he may begin construction and operation and exercise the rights and privileges granted therein, and this year has not expired. A certificate from the board is not required in case of such franchise heretofore granted until more than a year has passed from the granting of the franchise during which time the holder has not exercised the rights and privileges or commenced construction or operation. The defendant does not come within the other class for his construction and operation under his franchise, or the exercise of the rights and privileges of the franchise have not been suspended or discontinued for more than one year since it was granted.

It is clear therefore that the law as interpreted by the title was not intended to apply to the peculiar conditions and circumstances in which the defendant is placed.

We are not required therefore to define the meaning of the term "construction or operation" nor are we required to determine whether the law violates the provisions of § 139 of the Constitution of the state. The constitutionality is attacked by the defendant. Under our interpretation of the law and its title he is not affected and this court

will not pass upon the constitutionality of the law at the suggestion of one who is not vitally interested therein. As stated in State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292:

"A litigant can be heard to question the validity of a statute only when and in so far as it is applied to his disadvantage."

See, also Minot Special School Dist. v. Olsness, 53 N. D. 683, 45 A.L.R. 1337, 208 N. W. 968.

We presume the constitutionality of a statute until the contrary appears conclusively, for the legislature may enact such legislation as it see fit unless prevented by the Constitution. "The state Constitution is a limitation, not a grant, of power. The legislature has full power of legislation except as limited by that instrument and the Federal government." Baird v. Burke County, 53 N. D. 140, 205 N. W. 17.

The conclusion of the lower court was "that the defendant is not required to make any application to the board of railroad commissioners of the state of North Dakota for any certificate of public convenience and necessity nor to have or possess any such certificate before commencing the construction and operation of the public utility contemplated in the franchise referred to" and dismissed the action on its merits. The judgment of the lower court is affirmed.

NUESSLE, Ch. J., and BURKE, CHRISTIANSON, and BIRDZELL, JJ., concur.

On Petition for Rehearing.

BURR, J. As the statute under consideration affects the powers and duties of the board of railroad commissioners the board was permitted to join in the argument in this case as amicus curiæ and files an earnest and thoughtful petition for rehearing. This petition is directed to the first part of the syllabus and urges that the law set forth therein is not applicable to the statute in question,—in any event goes beyond the established law relating to titles of acts.

It is the contention of the board that the court should not resort to an analysis of the title unless there be an ambiguity in the law itself, or in that portion of the statute which is under examination. The petition says, quoting from 25 R. C. L. 1032: "It is, however, only when the

meaning of provisions in the body of the act is doubtful that resort may be had to the title. And the title cannot control or vary the meaning of the enacting part, if the latter is plain and unambiguous, nor, as a rule, can the title be used for the purpose of adding to the statute or extending or restraining any of its provisions." Further, the petition says: "We do not concede that the title should be in question as relating to the intent or construction of the statute." Of course the petitioner does not claim the title of an act may express one thing and the statute an entirely different subject, even though the statute be plain and unambiguous; but the petition does say the court is in error in assuming "the law is capable of two interpretations" and then proceeds to state "the court has violated well-settled principles of law in determining the intention of the legislature from the wording of the title rather than the body of the act." From this we gather the petitioner argues that where the legislature sets forth its intent in the body of an act and this intent, when the act is considered by itself without reference to the title, is clearly expressed and unambiguous, there should be no resort to the title.

The petition apparently overlooks the difference in classification which arises from constitutional requirements. The quotation from Ruling Case Law is dealing largely with federal legislation. There is no provision in the Constitution of the United States similar to section 61 of our state Constitution. When the title to an act was purely the work of the clerk of the legislative body, and placed there for convenience the title had no bearing upon the statute. When the title was set forth by the legislature itself, without being required by constitutional provisions, no resort would be had to the title unless there was an ambiguity in the statute itself, and then the title would be examined to ascertain the legislative intent. But where we have a statutory provision requiring the subject of the statute to be embraced in the title then the title controls the bill and not the bill the title. In Divet v. Richland County, 8 N. D. 65, 68, 76 N. W. 993, it was held that an act, the body of which is broader than its title "must be annulled so far as it transcends its title and is inconsistent therewith."

As set forth in Sutherland on Statutory Construction, 2d ed. 198: "If a restrictive title is chosen the act must be kept within it." See Mitchell v. Colorado Mill. & Elevator Co. 12 Colo. App. 277, 284, 55

Pac. 739 where it is held that the title of the act is decisive as to the extent and interpretation of the act under constitutional provisions similar to ours. Of course anything germane to the subject-matter stated in the title may be set forth in the act. Clearly, therefore, the subject-matter of a statute is construed in the light of its title. Hence if the title states that no certificate from the board is required of those public utilities having a franchise "heretofore granted" when the exercise of the rights and privileges therein granted "has not been commenced within one year from the granting thereof, etc." then this limits the public utilities referred to in § 1 of the act, even though the act taken by itself, without reference to the title, would be construed as including all public utilities.

The petition for rehearing is denied.

NUESSLE, Ch. J., and BURKE, BIRDZELL and CHRISTIANSON, JJ., concur.