**FIRST STATE BANK OF COOPERSTOWN,** North Dakota, a North Dakota corporation, Plaintiff and Appellant,

v.

**Mrs. Claire (Delores) IHRINGER,** Defendant and Appellee.

**Civ. No. 8932.**

Supreme Court of North Dakota.

April 30, 1974.

Overby & Stokes, Cooperstown, for plaintiff and appellant.

R. C. Heinley, Carrington, for defendant and appellee.

VOGEL, Judge.

This appeal is from a summary judgment of dismissal of plaintiff's complaint seeking recovery on a promissory note.

The facts are not in dispute. On March 21, 1968, four persons, Clair R. Nelson and his wife, Marjorie A. Nelson, and Claire Ihringer and his wife, Delores Ihringer, executed a promissory note in the amount of $7,500, payable to First State Bank of Cooperstown. On the same date, Clair R. Nelson and Claire Ihringer, without the signatures of their wives, executed and delivered to the bank a real estate mortgage as security for the debt evidenced by the promissory note. Thereafter, several renewal notes were executed and delivered by all four signers of the original note. No part of the debt or interest was paid, and on March 23, 1972, the bank commenced this action on the note alone against Delores Ihringer as the sole defendant.

She interposed the provisions of the statutes of this State limiting deficiency judgments in suits upon debts secured by real property mortgages as an affirmative defense, and moved for a summary judgment of dismissal. The trial court granted her motion, and the bank has appealed.

The question before us is whether, and to what extent, the laws of this State regulating deficiency judgments apply to an action against a nonmortgagor debtor on a debt which is secured by a mortgage when foreclosure of the mortgage is not sought.

We agree with the trial court that the statutes in question apply to this case, but hold that they do not forbid the action here involved. Instead, they require supplementary proceedings by a jury to determine the amount of recovery. We therefore reverse and remand.

The explanation of our reasons requires a long analysis of a colorful chapter of North Dakota history. Some of that history is given in East Grand Forks Federal Savings & Loan Assn. v. Mueller, 198 N.

W.2d 124 (N.D.1972), particularly in Judge Teigen's dissent, and in Bank of Killdeer v. Fettig, 129 N.W.2d 365 (N.D.1964).

The first anti-deficiency judgment law was passed in 1933. By Chapter 155, 1933 Session Laws, the Legislature added to a re-enactment of prior law as to judgments of foreclosure this clause:

" . . . and the court shall have no power to render a deficiency judgment."

At the time Chapter 155 was adopted, the Nation was in the grip of the Great Depression and in addition North Dakota was devastated by drought and low prices. That year, the per capita personal income in the United States was $375, but in North Dakota it was only $145. Seventy-eight per cent of Federal Land Bank loans were delinquent. Elwyn B. Robinson, History of North Dakota, pp. 399–400 (1966). It was the fourth-driest year of record. *Ibid.*, p. 398.

Shortly after the Legislature passed the first anti-deficiency judgment law, Governor Langer, in April 1933, issued the first of his Executive Moratoria against foreclosures and evictions. Bruce Nelson, Land of the Dacotahs, p. 311 (1946).

In Burrows v. Paulson, 64 N.D. 557, 254 N.W. 471 (1934), this court construed Chapter 155, 1933 Session Laws, to merely prohibit deficiency judgments as part of foreclosure actions, but to permit separate actions for deficiencies.

The Legislature obviously was upset by this interpretation, because in 1937 it passed a new statute, Chapter 159, 1937 Session Laws, which provided that—

" . . . the Court shall under no circumstances have power to render a deficiency judgment for any sum whatever."

Section 2 of Chapter 159 provides:

"That neither before nor after the rendition of the judgment and decree herein provided for, shall the mortgagee or contract holder, or their successors

[in] interest, be authorized or permitted to bring any action in any Court in this State for the recovery of any part of the debt secured by said mortgage or contract so foreclosed."

Then, in language which surely is unique, the Legislature expressed its displeasure with the interpretation of the 1933 statute in Burrows v. Paulson, *supra*, and stated its intention as to future interpretation of the 1937 statute in the following language, found in Sections 3 and 4 of Chapter 159:

"§ 3. *Intent. Interpretation.*] It is the intent of the legislature to provide by this Act that hereafter there shall be no deficiency judgments rendered upon notes, mortgages, or contracts given to secure the payment of money loaned upon real estate or given to secure the purchase price of real estate, and in case of default the holder of a real estate mortgage or land contract shall only be entitled to a foreclosure or a cancellation of the mortgage or contract and no Court shall place any other construction upon this Act.

"§ 4. *Saving Clause.*] If the Courts declare this Act unconstitutional in so far as it relates to mortgages or contracts in existence at the time of taking effect of the Act, they shall never consider its constitutionality with reference to mortgages or contracts entered into after the date when this Act becomes effective."

The invalidity of Section 4 is plain, in view of the separation of powers of the Judiciary and the Legislature, but the Legislature certainly made abundantly clear its intention to abolish deficiency judgments, in language suggestive of a constitutional confrontation between Legislature and Judiciary.

Incidentally, both houses of the Legislature passed Chapter 159 within a few weeks after President Roosevelt had sent to the Congress his Court-packing message,

on February 5, 1937, indicative of some parallel dissatisfaction with the United States Supreme Court.

It is worth noting that in 1937 the national financial depression and the even worse agricultural depression in North Dakota raged unabated. While the per capita income in the Nation was at a low ebb, the North Dakota per capita personal income was only 47 per cent of the national average. Between 1932 and 1937, the unpaid general property taxes in North Dakota amounted to more than $34,000,000. At the end of 1936, three-fourths of the taxes in the southwestern counties of the State were delinquent. Robinson, *op. cit.*, p. 400.

When the Code revisers recodified North Dakota law in preparation for the issuance of the Revised Code of 1943, they "omitted as surplusage" the saving clause quoted above and "the provisions instructing the court how to construe the act," i. e., Sections 3 and 4 of Chapter 159, 1937 Session Laws. They added this novel proviso to the reviser's note:

"If this revision has been properly done, the meaning is sufficiently clear that the court will have no difficulty construing it. If it is not properly done, the court, under the constitution, must construe it and the legislative assembly cannot limit that constitutional duty."

In 1951, the Legislature further amended the anti-deficiency judgment law, putting it in substantially its present form in Chapter 32–19, N.D.C.C. The amendments were made by Chapter 217, 1951 Session Laws. It is common knowledge that these amendments were made because the Federal Land Bank, one of the principal lenders in the State, was refusing to make loans unless deficiency judgments were permitted. The response of the Legislature was to allow deficiency judgments under very limited circumstances, and then only for such sum as was determined by a jury, in a separate action, to be the difference between the fair value (not necessarily the then

market value or the price at which the property was sold at foreclosure sale) and the amount of debt due after the foreclosure sale. The present statutes are found at Sections 32–19–04, 32–19–06, and 32–19–07, N.D.C.C.

These statutes were interpreted in a series of five decisions of this court: Liberty National Bank of Dickinson v. Daly, 96 N.W.2d 897 (N.D.1959); Bank of Killdeer v. Fettig, *supra*; Loraas v. Connolly, 131 N.W.2d 581 (N.D.1964); McKee v. Kinev, 160 N.W.2d 97 (N.D.1968); and East Grand Forks Federal Savings & Loan Assn. v. Mueller, *supra*.

In view of the uniquely clear and very outspoken declarations of intent of prior Legislatures, and in view of the language of the title to the 1951 Act quoted *infra,* it is doubtful that the legislators of 1951 failed to consider the possibility of suits against nonmortgagors liable on the mortgage notes. We therefore look to the new language of the 1951 statute for a determination of the meaning of the new legislation on this point, and, if the language is ambiguous, we look to the intent of the Legislature. The pertinent language of Chapter 217, 1951 Session Laws, now found in Sections 32–19–06 and 32–19–07, reads as follows:

"In any action for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, the court shall have the power to render judgment for the amount found to be due at the time of the rendition of said judgment, and the costs · of the action, and to order and decree a sale of the premises in such mortgage or contract described, or such part thereof as may be sufficient to pay the amount adjudged to be due and the costs of the action. The court shall have power to order and compel delivery of the possession of the premises to the purchaser at such sale, but in no case shall the possession of the premises so sold be delivered until after the expiration of one year from such sale, and the court shall direct, and the judgment shall provide, that during such one year period the debtor or owner of the premises shall be entitled to the possession, rents, use, and benefit of the real property sold. The court under no circumstances shall have power to render a deficiency judgment for any sum whatever against the mortgagor or purchaser, or the successor in interest of either, except as hereinafter provided. Where a note or other obligation and a mortgage upon real property have been given to secure a debt contracted subsequent to July 1, 1951, and the sale of the mortgaged premises has failed to satisfy in full the sum adjudged to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment, if he has so indicated in his complaint, *against the party or parties personally liable for that part of the debt and costs of the action remaining unsatisfied after the sale of the mortgaged premises. Such separate action for a deficiency judgment must be brought within ninety days after the sale of the mortgaged premises.* The court, in such separate action, may render a deficiency judgment *against the party or parties personally liable,* but such deficiency judgment shall not be in excess of the amount by which the sum adjudged to be due and the costs of the action exceed the fair value of the mortgaged premises. In case the mortgaged premises sell for less than the amount due and to become due on the mortgaged debt and costs of sale, there shall be no presumption that such premises sold for their fair value. In all actions brought for a deficiency judgment and before any judgment can be rendered therein, the determination of the fair value of the mortgaged premises shall first be submitted to a jury at a regular term or to a jury impaneled for that purpose, and no deficiency judgment can be rendered *against the party or parties personally liable* unless the fair value of the mortgaged premises is determined by such

jury to be less than the sum adjudged to be due and the costs of the action. Fifteen days' notice of the time and place when or where such fair value of the mortgaged premises shall be so determined shall, in all cases, be given, as the court may direct, to the *party or parties against whom personal judgment is sought.* At such time and place such party or parties may offer evidence to show the fair value of the mortgaged premises even though they may not have otherwise appeared in the action for a deficiency judgment. Any deficiency judgment so obtained shall be enforced by execution as provided by law, except that no execution shall be enforced after three years from the date of the rendition of such deficiency judgment. The mortgagee or vendor or the successor in interest of either shall not be permitted or authorized *either before or after the rendition of a judgment for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract,* if such mortgage or contract was made after July 1, 1951, to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract *so foreclosed or canceled* in excess of the amount by which such debt and the costs of the action exceed the fair value of the mortgaged premises. Such fair value shall be determined by a jury *in the same manner as the fair value is determined in cases where a deficiency judgment is sought* in an action to foreclose the mortgage and such judgment shall be enforced by execution as provided by law except that no such execution shall be enforced after three years after the date of the rendition of such judgment." [Emphasis supplied.] Sec. 32–19–06, N. D.C.C.

"Neither before nor after the rendition of a judgment for the foreclosure of a real estate mortgage or for the cancellation or foreclosure of a land contract made between July 1, 1937, and July 1, 1951, shall the mortgagee or vendor, or the successor in interest of either, be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed. It is the intent of this section that no deficiency judgment shall be rendered upon any note, mortgage, or contract given between July 1, 1937, and July 1, 1951, to secure the payment of money loaned upon real estate or to secure the purchase price of real estate, and in case of default the holder of a real estate mortgage or land contract shall be entitled only to a foreclosure of the mortgage or the cancellation or foreclosure of the contract. Except as otherwise provided in sections 32–19–04 and 32–19–06, *neither before nor after the rendition of a judgment for the foreclosure of a real estate mortgage or for the cancellation or foreclosure of a land contract* made after July 1, 1951, shall the mortgagee or vendor, or the successor in interest of either, be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed. *It is the intent of this section that no deficiency judgment shall be rendered upon any note, mortgage, or contract given after July 1, 1951, to secure the payment of money loaned upon real estate or to secure the purchase price of real estate, and in case of default the holder of a real estate mortgage or land contract shall be entitled only to a foreclosure of the mortgage or the cancellation or foreclosure of the contract* except as provided by sections 32–19–04 and 32–19–06." [Emphasis supplied.] Sec. 32–19–07, N.D.C.C.

Section 32–19–06 provides that a mortgagee or vendor may bring a separate action after foreclosure for a deficiency judgment. It provides, in substance, that (1) the court has no power to enter a deficiency judgment *against a mortgagor or purchaser* except as permitted by 32–19–06;

(2) if the mortgaged property is foreclosed and sold and a deficiency exists, the plaintiff may, if he has indicated in his complaint that he will do so, bring a separate action for a‚ deficiency judgment *against the party or parties personally liable for that part of the debt;* (3) in this separate action, the court may render judgment *against the party or parties personally liable,* but for only such amount as exceeds the fair value of the property, determined as the statute specifies; and (4) at the hearing to determine the fair value, fifteen days' notice must be given to the party or parties *against whom a personal judgment is sought, even though such persons have not appeared in the action for the deficiency judgment.*

■ The language of the statute indicates a clear intention by the Legislature to require, if a deficiency judgment is desired, that an action separate from the foreclosure action be brought against non-mortgagor debtors as well as mortgagors. The use of the language relating to parties "personally liable" can have no other meaning.

The statute also covers the subject matter of separate nonforeclosure actions against nonmortgagors who are personally liable on the note. This matter is covered by the last two sentences of 32–19–06, and by the provisions of 32–19–07, quoted above. The last two sentences of 32–19–06 provide that neither the mortgagee nor vendor nor successor of either may bring any action in any court in this State for recovery of any of the debt secured by the mortgage or contract in excess of the fair value of the mortgaged premises, which is to be "determined by a jury in the same manner as the fair value is determined in cases where a deficiency judgment is sought in an action to foreclose the mortgage . . ." This must mean that such separate actions can be brought without foreclosure but that recovery is limited to the same amount as if foreclosure had been had. To re-emphasize the point, 32–

19–07 reiterates it by providing that neither before nor after cancellation or foreclosure may an action be brought to recover any part of the debt secured by the mortgage or contract so foreclosed, except as provided in Sections 32–19–04 and 32–19–06.

If the last two sentences of 32–19–06 were not intended to be so applied, they might as well have been omitted, since the statute would be complete without them.

The controversy between the majority and the minority in East Grand Forks Federal Savings & Loan Assn. v. Mueller, *supra,* as well as any doubt over the meaning of the anti-deficiency judgment law in situations such as we have here, arises from ambiguous language in the last two sentences of *32–19–06.* On the one hand, the two sentences clearly provide that the mortgagee or vendor is not permitted "either *before* or after the rendition of a judgment" to bring an action for recovery of "any part of the debt secured," but the language then goes on to refer to "the mortgage or contract *so foreclosed or canceled,*" which creates the ambiguity in cases such as we have here, where no foreclosure or cancellation is sued for.

The words "so foreclosed or canceled" doubtless derive from Section 2 of Chapter 159, 1937 Session Laws, which provides that "neither before nor after the rendition of the judgment . . . shall the mortgagee or contract holder, . . . be authorized or permitted to bring any action in any Court in this State for the recovery of any part of the debt secured by said mortgage or contract *so foreclosed.*" [Emphasis supplied.] While this language is ambiguous, the uniquely emphatic language of Sections 3 and 4 of Chapter 159, *supra,* resolves any doubt as to the 1937 legislative intent. In 1951, when the Legislature grudgingly permitted deficiency judgments on mortgages and contracts entered into after July 1, 1951, it adopted the language just quoted to provide, as to mortgages and contracts entered into prior to July 1, 1951,

that "the court under no circumstances shall have power to render a deficiency judgment for any sum whatever against the mortgagor or purchaser [Sec. 32–1906, N.D.R.C.1943]," and to provide that "neither before nor after the rendition of a judgment for the foreclosure of a real estate mortgage or for the cancellation or foreclosure of a land contract made between July 1, 1937, and July 1, 1951, shall the mortgagee or vendor, or the successor in interest [of] either, be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the *mortgage or contract so foreclosed* [Sec. 32–1907, N.D.R. C.1943]." [Emphasis supplied.]

The same statute then goes on to make provisions as to mortgages and contracts entered into after July 1, 1951, using the language quoted above. We believe that the inclusion of the words "so foreclosed" was merely the inadvertent act of a draftsman or copyist who was mindful of the holding in Burrows v. Paulson, *supra*, that later deficiency actions were permissible, but who failed to realize that using these two words would create confusion and ambiguity as to actions on the debt without foreclosure. There could not be any inadvertence, however, in the language upon which we rely, to show the intention of the Legislature that deficiency judgments should not be permitted at all, except when a jury has found the value of the land to be less than the amount due. This intention of the Legislature is found first in the last two sentences of 32–19–06, which provide that the fair value is to be determined by the jury 'in the same manner as the fair value is determined in cases where a deficiency judgment is sought in an action to foreclose the mortgage . . . ." This shows a clear intention to permit separate judgments only in such cases. The legislative intent is further shown in the same section, forbidding the bringing of "any action in any court in this state for the recovery of any part of the debt secured by the mortgage or con-

tract so foreclosed or canceled in excess of the amount by which such debt and the costs of the action exceed the fair value of the mortgaged premises." The legislative intent is further shown in 32–19–07, providing that "in case of default the holder of a real estate mortgage or land contract shall be entitled only to a foreclosure of the mortgage or the cancellation or foreclosure of the contract except as provided by sections 32–19–04 and 32–19–06." And it is shown by the fact that the last two sentences of 32–19–06 would be totally unnecessary if the Legislature had not intended to allow actions without foreclosure, but only after such a determination by the jury.

Most persuasive of all is the fact that the title of the bill passed by the Legislature plainly supports this interpretation. The title to the bill which became Chapter 217, 1951 Session Laws, read:

*"A Bill*

"For an Act to amend and reenact sections 32–1904, 32–1906, and 32–1907 of the North Dakota Revised Code of 1943, relating to foreclosures of mortgages; providing for deficiency judgments but limiting them to an amount not exceeding the difference between the mortgage debt and the fair value of the mortgaged premises; and *prohibiting other suits except for the difference between the mortgage debt and the fair value of the mortgaged premises,* and declaring an emergency." [Emphasis added.]

The bill was the subject of much consideration by the Legislature, including at least two amendments both in committee and on the floor, and a report by one committee "without recommendation." It was passed twice by the House, first by a vote of 82 to 29, and ultimately (after amendment and passage in the Senate, the vote there being 35 to 14) by a vote of 73 to 18. Throughout this active consideration, the title never was amended.

■ It is our duty to construe statutes consistently with their titles, and to harmonize the statute with the title if possible, rather than extending the statute's terms beyond the range stated in the title. Olson v. Erickson, 56 N.D. 468, 217 N.W. 841 (1928).

Section 32–19–03 introduces additional complexity. It reads:

"Who subject to deficiency judgment. —If the mortgage debt is secured by the obligation, or other evidence of debt, of any person other than the mortgagor, the plaintiff may make such other person a party to the action and the court may render judgment for the balance of the debt remaining unsatisfied after a sale of the mortgaged premises as against such other person and may enforce such judgment as in other cases by execution or other process. Nothing elsewhere contained in this chapter shall be construed to postpone or affect any remedies the creditor may have against any person personally liable for the debt, other than the mortgagor or purchaser and the successors in interest of either."

The first sentence was inserted by the Code Revision Commission in preparing the 1943 Revised Code. The second sentence is derived from Chapter 155, 1933 Session Laws, and was re-enacted as part of Chapter 159, 1937 Session Laws. Neither sentence was amended or re-enacted by the 1951 statutes. Whatever the original intention of the Commission or the Legislature may have been, we hold that the statutes of 1951, being later in time and covering the same subject matter, must prevail.

■ Thus it is our holding that the legislative intent after the 1951 amendment was that the mortgagee or vendor could either (1) foreclose without asking for a deficiency judgment, or (2) foreclose, asking for a deficiency judgment in a separate action after the sale of the property, and obtain a judgment for only the difference between the mortgage debt plus costs and the

fair value determined by a jury against both mortgagors and nonmortgagors personally liable on the note, or (3) sue on the note without foreclosure but with recovery limited to the difference between the amount due on the note plus costs and the fair value of the property determined by a jury. The plaintiff here is exercising the third option.

We therefore remand the case to the district court for trial of the action, to be accompanied or followed, if demanded by the defendant, by a determination by a jury of the fair value of the mortgaged property, pursuant to the last two sentences of 32–19–06, and entry of judgment in favor of the plaintiff after such determination for "any part of the debt secured by the mortgage . . . in excess of the amount by which such debt and the costs of the action exceed the fair value of the mortgaged premises. Such fair value shall be determined by a jury in the same manner as the fair value is determined in cases where a deficiency judgment is sought in an action to foreclose the mortgage and such judgment shall be enforced by execution as provided by law except that no such execution shall be enforced after three years after the date of the rendition of such judgment." Sec. 32–19–06, N.D.C.C.

Reversed and remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and KNUDSON and PAULSON, JJ., concur.

TEIGEN, Judge (concurring in part and dissenting in part).

This case is one of first impression in this court. Although several cases have been decided interpreting the so-called no-deficiency judgment law, no cases have involved an action at law by a mortgagee or a seller under a contract for deed against a person other than a mortgagor or a purchaser on contract, or their successors or assigns. It is my opinion that Sections

32–19–06 and 32–19–07, N.D.C.C., have no application in such cases.

Chapter 155, Session Laws of 1933, and Chapter 159, Session Laws of 1937, prohibited deficiency judgments in foreclosure actions. The 1933 Act related only to the foreclosure of mortgages, but the 1937 Act related also to the foreclosure and cancellation of land contracts. Both Acts specifically provided that nothing contained therein should be construed to postpone or affect any remedy the creditor may have against any party personally liable for the "mortgage debt other than the mortgagors and their grantees" (1933 Act), and for "the debt other than the contractor or purchaser and their successors in interest" (1937 Act).

The Acts relate only to foreclosure actions and proceedings for the cancellation of land contracts. This is made clear by the titles of these two Acts, as adopted by the Legislature. The title of the 1933 Act states:

> "An Act to amend and re-enact Section 8100 of the Compiled Laws of North Dakota for the year 1913, relating to the foreclosure of mortgages, and what judgments may be entered therein."

The title to the 1937 Act states:

> "An Act relating to the foreclosure of real estate mortgages and land contracts, providing what the judgment and decree shall contain, and prohibit any deficiency judgments."

These Acts clearly did not prohibit a secured creditor from pursuing any remedy available to him against any person personally liable for the debt who was not the mortgagor or purchaser under contract, or their assigns or successors in interest.

In 1943 the Legislature adopted the North Dakota Revised Code of 1943. The current law was incorporated in this Code. The Code assigned section numbers to various parts of the law, and arranged them in chronological order. The purpose of the recodification was to incorporate all amendments and statutes, to harmonize the statutory declaratory laws as far as possible, and to revise, wherever necessary, so as to make a perfect, complete and consistent Code.

The exception to the prohibition against deficiency judgments, contained in the 1937 Act, was incorporated as a part of Section 32–1903, N.D.R.C.1943. This was suggested by the Code revisers, who added the exception to Section 8102 of the 1925 Supplement to the Compiled Laws of 1913, which had not been amended, and carried the combined sections into the 1943 revision. The language of Section 8102 was modified in this revision so as to comply with the law as it had been changed by the enactment of the no-deficiency judgment law. This was accomplished by merely deleting words referring to the mortgagor. The recommended revision was adopted by the Legislature when it adopted the N.D.R.C. of 1943, and this language was incorporated in the North Dakota Century Code when it was adopted by the Legislature in 1959.

The Code reviser's notes clearly state the purpose as follows:

> "This section has been revised in conformity with S.L.1937, c. 159, which permits deficiency judgments as against third parties but not against the mortgagor."

In making this revision the Code revisers omitted certain words referring to the mortgagor and substituted other words for clarity. In showing the change, the parenthesized words in the following quote are new words and the bracketed words were omitted:

> "If the mortgage debt is secured by the obligation, or other evidence of debt, (of) [or] any person other than the mortgagor, the plaintiff may make such other person a party to the action and the court may render judgment for the balance of (the) [such] debt remaining

unsatisfied after a sale of the mortgaged premises[,] as [well] against such other person [as against the mortgagor,] and may enforce such judgment as in other cases by execution or other process. (Nothing elsewhere contained in this chapter shall be construed to postpone or affect any remedies the creditor may have against any person personally liable for the debt, other than the mortgagor or purchaser and the successors in interest of either.)"

Section 8102 of the 1925 Supplement to the Compiled Laws of 1913, as amended by Chapter 159 of the Session Laws of 1937, and contained as Section 32–1903 of the N.D.R.C. of 1943, and adopted as Section 32–19–03 of the North Dakota Century Code.

Thus the Code revisers and the Legislature have expressed a clear intent to permit the creditor, in one action, to sue the mortgagor-debtor in rem for foreclosure, and any person other than the mortgagor, obligated for the debt, in personam in the same action, and that nothing contained in the chapter on foreclosure shall be construed to postpone or affect the creditor's remedy in personam against such other person personally liable for the debt. Therefore I conclude that Sections 32–19–06 and 32–19–07, N.D.C.C., are not applicable to that part of the action brought against the person personally liable for the debt, who is not the mortgagor or the purchaser, or the successors in interest of either.

A judgment for the recovery of a debt is in personam and is for the full amount of the debt. Technically, in such an action, there is no such thing as a deficiency judgment. A deficiency judgment is a judgment for a deficiency after the sale of mortgaged property, which secures the indebtedness and, according to Sections 32–19–06 and 32–19–07, N.D.C.C., is recoverable in a separate action in personam brought after the foreclosure sale. Sections 32–19–06 and 32–19–07, N.D.C.C.,

constitute a bar against an action in personam against the mortgagor or contract purchaser except by a separate action which may be brought after the foreclosure, and then only for an amount as limited thereby.

A "deficiency judgment" has been defined as a judgment or decree for that part of a debt secured by mortgage not realized from the sale of mortgaged property. Gentry v. Hibbler-Barnes Company, 113 Ga.App. 1, 147 S.E.2d 31 (1966); Renard v. Allen, 237 Or. 406, 391 P.2d 777 (1964); Stretch v. Murphy, 166 Or. 439, 112 P.2d 1018 (1941); Phillips v. Union Central Life Ins. Co., 88 F.2d 188 (8 Cir. 1937); Bank of Douglas v. Neel, 30 Ariz. 375, 247 P. 132 (1926).

To further carry out the legislative intent not to burden a creditor with the prohibitions of the no-deficiency judgment sections of the chapter on foreclosure against other persons obligated who are not mortgagors or contract purchasers, the Legislature, in enacting Chapter 217 of the Session Laws of 1951, amended Section 32–1904, N.D.R.C.1943. In amending this section, the Legislature recognized that the creditor, before the commencement of an action in foreclosure, may have sought collection of the debt by an action at law from a person obligated other than the mortgagor or contract purchaser. It also approved this right by continuing the statute in force. It did so by re-enacting Section 8103 of the Compiled Laws of 1913, without change, and adding thereto the requirement that in a foreclosure the plaintiff shall state in his complaint whether he will, in a later and separate action, demand judgment for any deficiency which remains due after the sale of the mortgaged premises. This section is now contained as Section 32–19–04 in the North Dakota Century Code. I quote this section, as amended, showing within parenthesis the amendment.

"In an action for the foreclosure or satisfaction of a mortgage, the complaint

shall state whether any proceedings have been had at law or otherwise for the recovery of the debt secured by such mortgage, or any part thereof, and if there have been, whether any and what part thereof has been collected. (The plaintiff shall also state in his complaint whether he will in a later and separate action demand judgment for any deficiency which remains due to him after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage.)"

This amendment is in harmony with the requirements of Section 32–19–03, N.D.C.C., which permits the court to render judgment for the balance of the debt remaining unsatisfied after the sale of the mortgaged premises against a person other than the mortgagor, but does not limit the amount of such judgment to the deficiency, as defined by Sections 32–19–06 and 32–19–07, N.D.C.C. This is so because the exception contained in Section 32–19–03, N.D.C.C., provides that the *chapter shall not* be construed to postpone or affect the remedies of the creditor against any person personally liable for the debt other than the mortgagor or purchaser, or their successors. As further evidence of the legislative intent that the full amount of the debt may be recovered from an obligated person not the mortgagor or purchaser, the Legislature did not amend Section 32–1905, N. D.R.C.1943. It was carried into the North Dakota Century Code without change. It provides:

"If it appears that any judgment has been obtained in an action at law for the moneys demanded by the complaint, or any part thereof, no proceedings shall be had in the foreclosure action, unless an execution against the property of the defendant in such judgment has been issued and the sheriff shall have made return that the execution is unsatisfied in whole or in part and that the defendant has no property out of which to satisfy such execution." Section 32–19–05, N. D.C.C.

Thus there is no prohibition against a secured creditor suing a person other than the mortgagor or contract purchaser, who is obligated for the debt, for the full amount of the debt and enforcing collection thereof, and allowing such person's property to be sold by the sheriff on execution to satisfy the judgment. In fact, this section requires that before any proceedings shall be had in the foreclosure the sheriff must determine that such other person has no property left out of which the sheriff can satisfy the execution. It requires the creditor to exhaust his remedy against such other person before he may proceed in foreclosure in all cases where the creditor has elected to sue such other person on the debt before commencing foreclosure.

For these reasons, it appears clear to me that the statutes have preserved the right of a secured creditor to proceed in an action at law to enforce payment of the debt against any person obligated thereunder, who is not the mortgagor or purchase contractor, or their successors, or, if he elects, he may institute an action in foreclosure, naming such other person as a codefendant and, after the sale of the mortgaged premises, he is entitled to a deficiency judgment against such other defendant for the balance of the debt, if any, without regard to the limitations contained in Sections 32–19–06 and 32–19–07, N.D.C.C.

For the reasons aforesaid I agree with the opinion of the majority, except as to that portion thereof limiting recovery to the difference between the fair value of the mortgaged property, as determined by a jury, and the debt plus the costs of the action.

I find Sections 32–19–06 and 32–19–07, N.D.C.C., are limited in their application to a foreclosure or cancellation action and, as to those, they apply only to the mortgagor or the contract purchaser, or their successors or assigns. In my mind, these sections are not applicable as limitations to the liability of other obligated persons for the debt.