The BANK OF KIRKWOOD PLAZA, Bismarck, North Dakota, a State Banking Corporation, Plaintiff and Appellee,

v.

E. Carl MUELLER, Dale Mueller, Royhl B. Ebert and Wayne Wikenheiser, Defendants and Appellants.

Civ. No. 9760.

Supreme Court of North Dakota.

June 26, 1980.

Rehearing Denied July 17, 1980.

Kelsch & Kelsch, Bismarck, for plaintiff and appellee; argued by Thomas F. Kelsch, Bismarck.

Rausch & Rausch, and Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendants and appellants; argued by Richard P. Rausch, Bismarck.

PEDERSON, Justice.

This is an appeal from a summary judgment in favor of the Bank of Kirkwood Plaza in an action brought to enforce a guaranty of three promissory notes. Judgment affirmed as modified.

The facts in this case are uncontroverted and there is no claim that a trial on any fact issue should have been held.

On April 5, 1978, Develco, Inc., a North Dakota corporation, executed three promissory notes to the Bank in the total face amount of $125,000 at 10% interest, due on demand, and secured these notes with mortgages on three homes built in Mercer County. That same day, E. Carl Mueller, Dale Mueller, Royhl B. Ebert and Wayne Wikenheiser [hereinafter "guarantors"] executed a continuing guaranty agreement with the Bank. Under this guaranty agreement they individually and unconditionally guaranteed the payment of any obligation between the Bank and Develco in the maximum amount of $125,000, plus interest. Only Royhl Ebert signed the promissory notes, and none of the guarantors signed the mortgages.

The Bank made repeated demands on Develco to pay the promissory notes, but Develco refused. Thereafter the Bank made a demand on the guarantors to pay the notes, and the guarantors also refused. The Bank then tendered to the guarantors an assignment of all the Bank's interest in Develco's promissory notes, mortgages, collateral, and any other rights of the Bank against Develco upon the condition that the guarantors pay the promissory notes. The guarantors again refused.

The Bank brought foreclosure actions against Develco on each of the three mortgages. Because the mortgages are subject to the Short-Term Mortgage Redemption Act, Chapter 32-19.1, NDCC, a deficiency judgment was not sought. A sheriff's sale was held on February 11, 1980. The Bank was the purchaser at the sale for the amount of the judgment with interest and costs ($147,842.25).

Prior to the sheriff's sale, the Bank also brought this suit, an independent action in district court against the guarantors based upon the guaranty agreement. The guarantors admitted the giving of the guaranty, but contended that the guaranty agreement was invalid and such action was barred under North Dakota's anti-deficiency statutes.

The Bank moved for summary judgment, which the district court granted. The court held that the obligations imposed by the promissory notes and mortgages were separate and distinct from the obligations imposed by the guaranty agreement and, consequently, that the Bank could sue the mortgagor, Develco, in a foreclosure action and still maintain an action against the guarantors, who were non-mortgagors. Judgment was rendered against the guarantors in the sum of $147,842.25.

On appeal, the guarantors rely on *First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857 (N.D.1974), for the proposition that under the State's anti-deficiency statutes (§§ 32-19-04, 32-19-06, 32-19-07, NDCC), the Bank, as holder of the mortgages, is entitled only: (1) to foreclosure or (2) to sue on the note, but with recovery limited to the difference between the amount due on the note plus costs and the fair value of the property determined by a jury. The crux of their argument is that by allowing the Bank to foreclose on the notes and also bring a separate action for a money judgment, the Bank will be allowed a double recovery on the same indebtedness. On the other hand, the Bank contends that if guarantors are shielded from recovery by the anti-deficiency statutes, it will render useless an important business tool.

Generally, the anti-deficiency statutes provide that in case of default, a holder of a real estate mortgage is limited to a foreclosure action, § 32-19-07, NDCC, and additionally, that the court shall not render a deficiency judgment against the mortgagor except under very limited circumstances provided for in the statutes. Section 32-19-06, NDCC. In order to be eligible for a deficiency judgment, the plaintiff must bring a separate action against the parties personally liable for that part of the debt, with recovery limited to the difference between the amount due on the note, plus costs, and the fair market value of the land. Section 32-19-06, NDCC.

In *Ihringer, supra,* both the husband and wife executed a note, but only the husband executed a mortgage as security for the note. No guarantors were involved. The mortgagee bank did not foreclose on the mortgage but, rather, brought an action against the wife on the note. The issue was whether or not the anti-deficiency statutes applied to an action against a non-mortgagor debtor. This court held that the anti-deficiency statutes applied, and that the mortgagee-bank could sue on the note with recovery in the action against the wife limited to the difference between the amount due on the note, plus costs, and the fair market value of the land. The court determined that the anti-deficiency statutes applied to a non-mortgagor debtor: (1) on the basis of language in § 32-19-06, NDCC, which provides that if the mortgaged property is foreclosed and sold and a deficiency exists, the plaintiff may bring a separate action for a deficiency judgment "against

the party or parties personally liable for that part of the debt," and (2) on the basis of the fact that "in view of the . . . outspoken declarations of intent [to allow deficiency judgments only under very limited circumstances], . . . it is doubtful that the legislators of 1951 failed to consider the possibility of suits against non-mortgagors liable on the mortgage notes." *First State Bank of Cooperstown v. Ihringer, supra,* 217 N.W.2d at 860.

Using the *Ihringer* analysis, we do not reach the same conclusion with respect to guarantors. First of all, in *Ihringer,* the action against the wife was based upon the note that she had executed. Consequently, the wife fell within the purview of § 32–19–06, NDCC, as she was a "party personally liable on the debt."

■ The action in the instant case against the guarantors, on the other hand, is not based on obligations imposed by the notes or the mortgages given to secure the notes, but on a separate and distinct contract of guaranty. A contract of guaranty is defined as follows:

> "The contract of a guarantor is his own separate contract. It is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done, and not merely an engagement jointly with the principal to do the thing. . . . [Citations omitted.] A liability such as this, although it may result in requiring a guarantor to pay the note, is not predicated upon 'the terms of the instrument,' but upon a contract entirely separate and distinct." *Northern State Bank v. Bellamy,* 19 N.D. 509, 125 N.W. 888, 890 (1910).

See also § 22–01–01, NDCC.[1]

■ Thus, although the guarantors may be required to pay the notes in the instant case, the liability is not predicated on the notes or the mortgages, as in *Ihringer,* but on the separate contract of guaranty.

This same conclusion was reached by the California Court of Appeals in *Mariners Savings and Loan Association v. Neil,* 22 Cal.App.3d 232, 99 Cal.Rptr. 238, 49 A.L. R.3d 549 (1972). In *Mariners,* the lender brought an action against the husband to enforce his personal guaranty of his wife's promissory note which was secured by his wife's trust deed on an item of real property. The court held that California's anti-deficiency statute did not shield the husband as it has no application to an action against a guarantor.

> "Thus when defendant's wife executed a note and secured it with a trust deed on her separate property, no obligations were thereby imposed on defendant.

> "Defendant's obligation on the contract of guaranty was separate and distinct from the primary obligation of his wife." 99 Cal.Rptr. at 240, 241.

See also *E. I. C., Inc. v. M & O Enterprises,* 95 Cal.App.3d 110, 156 Cal.Rptr. 275 (C.A. 1979):

> "It has been consistently held that the Code of Civil Procedure section 580d [which prevents a deficiency judgment following a nonjudicial sale of real property given as security for a note] does not apply to an action by the creditor against a guarantor of the secured transaction. [Citations omitted.]" 156 Cal.Rptr. at 278.

Secondly, although the intent may be clear from the language of North Dakota's anti-deficiency statutes that non-mortgagor debtors are covered within the scope of the statute, it is not clear that guarantors were also meant to be covered. We will not extend the scope of the anti-deficiency statutes beyond that which is clear from the statute. *Fetzer v. Minot Park District,* 138 N.W.2d 601 (N.D.1965). The Legislature may, if it wishes, include guarantors within the protection of the anti-deficiency statutes. It has not done so.

Having determined that the liability of the guarantors derives wholly from the

---

1. 22 01 01(1). "A 'guaranty' shall mean a promise to answer for the debt, default, or miscarriage of another person."

guaranty agreement, we examine that document to see exactly what those liabilities are. The guaranty agreement provides in pertinent part as follows:

"In consideration of the sum of One Dollar to me paid by the Bank of Kirkwood Plaza (hereinafter called the Bank), the receipt whereof is hereby acknowledged, and further in consideration of the credit given and hereafter to be given by said Bank to Develco, Inc. (hereinafter called the Debtor), I hereby guarantee to the Bank, its assignees and transferees, the payment at maturity of all promissory notes, certificates of deposit, checks, drafts, acceptances, overdrafts and other indebtedness of whatsoever nature upon or for which the Debtor is or may hereafter become obligated to the Bank, . . .

"I waive notice of acceptance of this guaranty by the Bank as to present and future obligations, indebtedness and liability of the Debtor to the Bank of the character aforesaid; and I waive presentment, demand, protest, notice of protest and notice of dishonor as to each and all items constituting the indebtedness or obligation hereby guaranteed. No renewal or extension of the time of payment of any such item shall affect my liability hereunder, whether made before or after written notice of revocation of this guarantee is given.

"This guarantee is given by me without regard to any security or otherwise, and shall be effective as to any of said notes or other evidences of indebtedness or liability as if no other guaranty or security had been given therefor. . . . I agree that no exchange, release or surrender of any such collaterals and no release or discharge of any party liable thereon shall affect my liability on this guaranty. I waive all rights of subrogation to any securities and remedies of the Bank until the entire indebtedness of the Debtor shall have been fully discharged.

"This is an absolute and continuing guarantee and is not conditioned upon any other person or party signing the same. It shall as to me continue in full force and effect notwithstanding the death, withdrawal or release of any co-guarantor or co-surety, both as to obligations of the Debtor then existing of the character here guaranteed and or thereafter created.

"My liability hereon shall not exceed One Hundred Twenty-five Thousand and no/100 Dollars ($125,000.00) principal, together with interest which may accrue thereon, . . . ." [Emphasis added.]

█ It is clear from the underscored language of the guaranty agreement that this is an absolute guaranty, i. e., liability becomes fixed on default of the debtor.[2] It is also a guaranty of payment, which is defined as follows:

"The fundamental distinction between a guaranty of payment and one of collection is that, in the first case, the guarantor undertakes unconditionally that the debtor will pay, and the creditor may, upon default, proceed directly against the guarantor without taking any step to collect of the principal debtor, . . . while, in the second case, the undertaking is that, if the demand cannot be collected by legal proceedings, the guarantor will pay, and consequently legal proceedings against the principal debtor and a failure to collect of him by those means are conditions precedent to the liability of the guarantor, . . . ." *State Bank of Burleigh County v. Porter,* 167 N.W.2d 527, 532, 533 (N.D.1969).

See also § 22–01–10, NDCC.[3]

█ In *State Bank of Burleigh County, supra,* the court held that where the obligation of the guarantors was absolute and was a guaranty of payment, the guarantors could not require the creditor to first proceed against the principal debtor on the

---

2. *State Bank of Burleigh County v. Porter,* 167 N.W.2d 527, 532 (N.D.1969).

3. Section 22–01–10. "A guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal and without a demand or notice."

notes before bringing an action against the guarantors. Therefore, there is no reason in the instant case, since this is also a guaranty of payment, why the Bank could not proceed directly against the guarantors for a money judgment.

■ The guarantors cannot at this point claim that the Bank is estopped from doing so because of the foreclosure action. The guaranty agreement provides that the guarantors "waive all rights of subrogation to any securities and remedies of the Bank." Furthermore, the guarantors refused the Bank's tender to them of Develco's promissory notes and mortgages before the foreclosure sale. Thus, the guarantors, by reason of explicit waivers and conduct, cannot claim that the Bank has prejudiced their rights by acquiring the mortgaged property through the sheriff's sale as they had ample opportunity to protect their rights. However, our determination that the Bank was not estopped from proceeding directly against the guarantors for a money judgment does not mean that the Bank has the right to a double recovery.

■ Upon payment of the sums due under the terms of the guaranty agreement, the guarantors are entitled to an assignment of all of the interests in the property held by the Bank. Upon remand, the judgment should be amended accordingly. As modified, the judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.