Allen STEWART, Plaintiff and Appellee,

v.

Alan R. HENNING, Defendant,

and

Dennis Danielson, Defendant
and Appellant.

Civ. No. 910207.

Supreme Court of North Dakota.

Feb. 20, 1992.

John R. Gregg, Bottineau, for plaintiff and appellee.

John J. Petrik of Pringle & Herigstad, P.C., Minot, for defendant and appellant.

VANDE WALLE, Justice.

Dennis Danielson appealed from a judgment finding him liable on a promissory note to Allen Stewart in the amount of $61,275.72. We affirm.

Danielson, Stewart, and Alan Henning were shareholders in D & H Broadcasting, Inc., which owned a radio station in Bottineau. In 1981, Stewart sold his interest to Danielson and Henning, receiving a promissory note from Danielson, Henning and the corporation. The corporation also gave Stewart a mortgage on real property and a security interest on personal property. In 1983, the parties renegotiated the sale and

a second note was executed by the signers of the original note. Henning bought Danielson's stock in 1989, and as a part of that purchase agreed to indemnify Danielson for any claims made by Stewart.

After the fall of 1988, Stewart received only interest payments on the promissory note. Stewart sued Henning and Danielson for the balance of the note. Henning allowed a default judgment; Danielson waived his right to a jury, and a bench trial was held on Stewart's claim against him.

On appeal, Danielson argues that North Dakota law prohibits a deficiency judgment in this case, and that the finding of a fair value of zero for the corporation's assets was clearly erroneous.

In support of his argument that Stewart's deficiency judgment is barred, Danielson makes two assertions. First, he contends that Stewart was required to foreclose his real and personal property liens before he could obtain a deficiency judgment. The rights of a creditor who takes a security interest in real property, that is a "mortgagee," are governed by our anti-deficiency statutes, sections 32–19–06 and 32–19–07, NDCC. Under those statutes, a mortgagee has three options upon default:

"(1) foreclose without asking for a deficiency judgment, or (2) foreclose, asking for a deficiency judgment in a separate action after the sale of the property, and obtain a judgment for only the difference between the mortgage debt plus costs and the fair value determined by a jury against both mortgagors and nonmortgagors personally liable on the note, or (3) sue on the note without foreclosure but with recovery limited to the difference between the amount due on the note plus costs and the fair value of the property determined by a jury."

*First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857, 864 (N.D.1974); *see also Brunsoman v. Scarlett,* 465 N.W.2d 162 (N.D.1991). Danielson, in effect argues that when a note is secured by a mortgage on real property and a security agreement in personal property, only options one and two are available to a credi-

tor. He cites *Production Credit Ass'n of Fargo v. Foss,* 391 N.W.2d 622 (N.D.1986) as authority for that proposition. In *Foss,* we concluded that a secured party had complied with our anti-deficiency law when it elected to foreclose on both real and personal property given as security and requested the right to seek a deficiency judgment against the mortgagors in a separate action after the liens were foreclosed. We did not say that the secured party was required to follow this procedure. *See* NDCC § 41–09–47(4) [U.C.C. § 9–501(4)] ["If the security agreement covers both real and personal property, the secured party may proceed under ... (the provisions of the UCC) as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property...."]; *see also State Bank of Towner v. Hansen,* 302 N.W.2d 760 (N.D.1981). But the corporation, not Danielson, is the mortgagor and it is not necessary for us to decide what options are available to a secured party upon default by a party who signed a promissory note and who has also given security interests in real and personal property.

■ In *First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857 (N.D. 1974), we reviewed our anti-deficiency law and concluded that a creditor may "sue a nonmortgagor debtor on a debt otherwise secured by a real property mortgage without first resorting to foreclosure of the mortgage." 217 N.W.2d at 857, syllabus 1. If that option is taken, however, the statutes limit the recovery to the difference between the amount due on the note plus costs and the fair value of the property determined by a jury. *Id.* at 862, 864. The trial court correctly applied this procedure.

■ Danielson's second contention, in the alternative, is that Stewart's failure to follow requirements of our commercial

statutes bars a "deficiency judgment."[1] He cites section 41–09–47(4), NDCC, and argues that this section requires that Danielson either foreclose on the real and personal property in one action or proceed against the real and personal property in separate actions. We do not, however, read that statute as requiring a creditor with a security agreement in personal property to foreclose his lien in order to obtain a judgment against a debtor-in-default. Section 41–09–47(4) must be read with subsection one of the same section, which states, in part, that a secured party "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." NDCC § 41–09–47(1). Under this section, we have said that a "creditor can ignore his security interest and obtain a judgment on the underlying obligation and proceed by execution and levy." *Dakota Bank & Trust Co. of Bismarck v. Reed,* 402 N.W.2d 887, 890 (N.D.1987) [*quoting* James White & Robert Summers, Uniform Commercial Code § 26–4 (2d ed. 1980)]. Section 41–09–47(4) describes which law applies when a creditor forecloses a security interest in real property, personal property, or both; it does not require a creditor to foreclose his interest in order to collect the debt from a nonmortgagor. Because our anti-deficiency law allows a creditor to sue a nonmortgagor on a debt without first foreclosing the mortgage and our secured transaction law allows a creditor to obtain a judgment on the underlying debt, we conclude that Stewart was entitled to sue Danielson on the promissory note, subject only to the "fair value" limitation identified in *Ihringer, supra.*

■ Danielson argues that the trial court's determination of fair value for the corporate assets was clearly erroneous. The term "fair value," for purposes of determining enforceable remaining debt under the anti-deficiency statutes, is a broad-

---

1. Although Danielson and the trial court refer to the judgment as a "deficiency judgment," Stewart sought a money judgment for the balance due on a promissory note. By definition, a deficiency judgment is a money judgment for the portion of a debt left unsatisfied after a mortgage is foreclosed. *See* NDCC § 32–19–04; *see also* 59 C.J.S. *Mortgages* § 777 (1949). Because Stewart did not, and, we conclude in this opinion, need not, foreclose either his mortgage or security agreement in order to obtain a judgment against Danielson, he did not receive a "deficiency judgment."

er concept than "fair market value." *Schiele v. First Nat'l. Bank of Linton,* 436 N.W.2d 248 (N.D.1989). "Fair value" means the value of the property which will produce a fair and equitable result between the parties. *Id.*

"The language of the statute and its legislative history show that the Legislature authorized the jury to balance the competing interests of the debtor and the mortgagee in reaching its determination of fair value. We also believe the Legislature intended that, rather than tightly restricting evidence on the issue of value, all evidence bearing on the value of the property and the circumstances of the underlying transaction can be presented to the jury. This would include, among other things, the amount of the mortgage, the amount of any subsequent mortgage, fluctuations in land values, and the remaining amount claimed to be due on the debt. Market value is, of course, admissible as one factor for consideration by the jury, but it is not controlling."

*Federal Land Bank of St. Paul v. Berquist,* 425 N.W.2d 360, 364 (N.D.1988).

■ The trial court found that the fair value of the corporate assets was zero. Determining "fair value" is a question of fact; findings of fact made by the trial court will not be set aside unless clearly erroneous. NDRCivP 56(a); *Gillmore v. Morelli,* 472 N.W.2d 738 (N.D.1991). A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*

The trial court made several findings which support its determination of fair value, including: the fair market value of the physical assets of the business, including the real property, was $58,000; the debts of the business, at the time of trial, were $182,000 to $177,000; there was a $250,000 offer pending for the radio station. The terms of the offer were $80,000 down with the balance to be paid over ten years. Us-

ing this offer to satisfy the creditors depended on several contingencies: the Internal Revenue Service, State Bank of Bottineau (a second mortgagee), and Stewart would have to accept assignments of the installment payments; the IRS would have to forego additional interest on the backtaxes; and the Federal Communications Commission would have to approve the transfer of the broadcast license. Under this plan, it appears that Stewart would have to wait over four years to receive payment.[2] From these findings the trial court determined that the fair value of the corporate assets, that is, the value which would produce a fair and equitable result between Danielson and Stewart, was zero. Reviewing this record we are not left with a definite conviction that a mistake has been made.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., LEVINE, J., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of MESCHKE, J., disqualified.

H.F. GIERKE, III, J., a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.

---

2. In addition, the court noted that Danielson sold his interest in the corporation to Henning in 1989, and that none of the proceeds of this sale were paid to Stewart even though Danielson and Henning were in default.