**NORWEST BANK NORTH DAKOTA, NATIONAL ASSOCIATION, Plaintiff and Appellee,**

v.

**James D. CHRISTIANSON, Christopher A. Carlson, and James P. Beck, Defendants and Appellants.**

**Civ. No. 920208.**

Supreme Court of North Dakota.

Dec. 22, 1992.

Lawrence R. Klemin of Bucklin & Klemin, P.C., Bismarck, for plaintiff and appellee.

Irvin B. Nodland of Nodland & Dickson, Bismarck, for defendants and appellants.

VANDE WALLE, Justice.

James D. Christianson, Christopher A. Carlson, and James P. Beck appealed from a judgment finding them liable on guaranties to Norwest Bank North Dakota, N.A., in the amount of $132,654.90. We affirm.

In 1985, Soo Hotel Associates [Soo], a limited partnership in which Christianson,

Carlson, and Beck [Partners] are general partners, executed a promissory note in favor of Norwest Bank North Dakota, N.A., [Norwest] in the amount of $132,500.00. The note was secured by a mortgage in the amount of $132,500.00 on real property owned by Soo in downtown Bismarck. Both the note and the mortgage were signed by Partners. Additionally, at the time the loan was negotiated, Partners were asked to sign personal and unconditional guaranties in the event Soo, as the mortgagor, defaulted. Partners claimed that at the time of the loan negotiation, Thomas Gietzen, a loan officer with Norwest, advised them that there was sufficient equity in the real estate for which the bank was taking the mortgage to cover the indebtedness, and regardless, Norwest would only pursue the personal guaranties if the real estate value turned out to be less than the balance due on the note. Partners claimed they were assured that Norwest would only pursue the personal guaranties if a deficiency existed after sale of the real estate. Gietzen, by way of affidavit, denies any such conversation took place, and the guaranty agreements signed individually by Partners make no provisions which would support Partners' contention.

After several renewals, the note became due in late 1991. In early 1992, Norwest commenced an action against Partners on their personal guaranties without foreclosing on the real estate on which Soo's note was secured.

Partners admitted Soo's default in repayment, admitted signing the personal guaranties, and attested to the genuineness of the guaranties as proffered by Norwest. The trial court resolved the legal issues against Partners and granted Norwest's motion for summary judgment.

Partners raises these issues for our consideration:

(1) In a direct real estate mortgage action, if a bank pursues personal guaranties of general partners of a limited partnership without first foreclosing the mortgage, is its recovery limited to the difference between the amount owed and the fair market value of the real estate as determined by a jury?

(2) Are the guaranty agreements sufficiently vague, ambiguous, or inconsistent so as to permit Partners to introduce parol evidence to vary their terms?

(3) Do the guaranty agreements contain illegal and unconscionable provisions that should prevent or impair their enforceability?

### Guaranty Limitations

■ Partners contend that after a mortgagor's default, a mortgagee may sue the guarantors of the mortgagor's debt, but the recovery is limited to the difference between the amount owed and the fair market value of the mortgaged real estate if the mortgagee does not first foreclose on the real estate.

In *First Interstate Bank of Fargo v. Larson*, 475 N.W.2d 538 (N.D.1991), we held that the anti-deficiency statute, NDCC § 32–19–07, applies to general partners who guaranty their partnership's notes which are secured by a mortgage. Because a general partner's guaranty is not a separate obligation from the underlying note, the general partner's liability is not founded on the guaranty, but on the note itself. Therefore, a mortgagee suing on a general partner's guaranty after the partnership's (mortgagor's) default, is subject to the rights and limitations enumerated in the anti-deficiency statute. *Larson* would have been dispositive of this appeal, but we specifically held that its application would be applied prospectively only. As the mortgage, note, and guaranties were signed by Partners in 1985, *Larson*, decided in 1991, has no bearing on their case. *Larson*, *supra*, at 545 *citing State v. Klein*, 63 N.D. 514, 249 N.W. 118 (1933) ["The rights and obligations of contracting parties cannot be altered by subsequent legislation or judicial decision."].

In 1985, the law with respect to the liability of general partners as a result of their guaranties of the partnership's mortgage, was controlled by the Court's decision in *Mandan Sec. Bank v. Heinsohn*, 320

N.W.2d 494 (N.D.1982) *overruled by Larson, supra.* In *Heinsohn,* the majority of this Court held that a general partner who personally guaranteed payment of a partnership note secured by a mortgage, changed the nature of the partner's obligation on the debt—and as a result the partner was not only jointly liable on the note, but was jointly and severally liable on the guaranty. Because the liability of the general partner on the guaranty was not founded on the underlying note secured by the mortgage, the anti-deficiency statute did not preclude recovery on the individual guaranty and the creditor could collect on the guaranty without first foreclosing on the real property. *See also Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640 (N.D.1980) [shareholder's personal guaranty of corporation's note secured by mortgage was a separate and distinct obligation as opposed to their obligations as shareholders, so creditor not bound by anti-deficiency statute and may sue on guaranty without first foreclosing].[1]

Partners' reliance on *Stewart v. Henning,* 481 N.W.2d 230 (N.D.1992) and *First Nat'l Bank & Trust of Williston v. Ashton,* 436 N.W.2d 215 (N.D.1989) is misplaced. In *Ashton,* individuals executed a promissory note secured by a mortgage and simultaneously executed personal guaranties on the mortgage debt. Upon default, the mortgagee sued the individuals on their personal guaranties, and we concluded that the individuals had not executed "guaranties" as defined under section 22–01–01, NDCC, because the signers were both the principal debtors and guarantors. Therefore, the anti-deficiency statutes were applicable. In Partners' case, Partners were not the principal debtors on the mortgage under the majority holding in *Heinsohn.*

In *Stewart,* two shareholders, as individuals, and a corporation executed a promissory note in favor of Stewart. The corporation, as security for the note, gave Stewart a mortgage on real property and a security interest on personal property. After default on the promissory note, Stewart sued the individuals for its balance. The notes were secured by a mortgage on real property and a security interest on personal property. Relying on *First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857 (N.D.1974), we held that a creditor may proceed against the personal property or the real property in no particular order. Because the shareholders were not mortgagors, the creditor could also proceed on the debt before foreclosing on the properties, but if that option is taken, the anti-deficiency statute, NDCC § 32–19–07, limited the creditor's recovery to the difference between the amount due on the note plus cost and the fair market value of the property as determined by a jury. *Stewart* is factually inapposite to Partners' case. Partners guaranteed the partnership's note, the guaranties were separate obligations from the note, and so the anti-deficiency statutes do not apply.

Applying the law at the time the contract was entered into, Partners' obligation of repayment is not founded on the note, but on their personal guaranties. *Heinsohn, supra.* Therefore, the anti-deficiency statutes do not apply to this action, and Norwest is not bound by their limited options upon the default of the mortgagor. *See* NDCC § 32–19–07; *Ihringer, supra.* Norwest is free to collect the entire amount guaranteed jointly and severally by Partners without first resorting to foreclosing

---

1. In *Mandan Sec. Bank v. Heinsohn,* 320 N.W.2d 494 (N.D.1982) and *Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640 (N.D.1980), the mortgagee foreclosed on the real property before attempting to collect on the personal guaranties. Partners contend that these cases are not analogous and thereby inapplicable, as Norwest first attempted to collect on the personal guaranties. But in *Mueller,* we cited to *State Bank of Burleigh County v. Porter,* 167 N.W.2d 527 (N.D. 1969) for the proposition that where the obligation of the guarantors was absolute and there was a guaranty of payment, the guarantors could not require the creditor to proceed against the principal debtor on the notes before bringing an action against the guarantors. We did not thereby imply that a mortgagee must follow a particular chronological order in which to collect what is due. Partners unconditionally guaranteed the Soo debt and made a promise of repayment, so Norwest was allowed to sue on the personal guaranties of Partners without first foreclosing on the underlying real estate as mortgaged by Soo.

on the real estate, and without limiting its recovery to the difference between the fair market value of the real estate and the amount due on the note.

## Parol Evidence

■ Partners, by way of sworn affidavit, contended that Gietzen assured them that the guaranties were merely additional security and that Partners had little to worry about because the equity in the real estate on which the bank had taken a mortgage was more than sufficient to cover the debt. Furthermore, Partners contended that they were assured by Gietzen that, even if Soo did go into default, Norwest would first foreclose on the mortgage and Partners would only be liable for the deficiency. Gietzen, also by way of sworn affidavit, denied these assertions.

Partners did not allege that entering into the guaranties was a result of fraud, mistake, or accident—thereby perhaps opening the door for the introduction of parol evidence. Rather, to elucidate the parties's intentions and to determine the meanings attached to the guaranties by all parties, Partners attempted to admit parol evidence on the grounds that the guaranties were ambiguous. We have held that extrinsic evidence can be considered to clarify the intent of the parties if a contract is ambiguous. *E.g., First Nat'l Bank & Trust Co. of Williston v. Scherr*, 456 N.W.2d 531 (N.D.1990). Partners alleged that Paragraph No. 8 and Paragraph No. 9 of the guaranty agreements are inconsistent. The relevant parts of the guaranties read:

"8. ... The undersigned expressly agree(s) that the undersigned shall be and remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision."

"9. ... The Bank shall not be required first to resort for payment of the Indebtedness to Borrower or other person or their properties, or first to enforce, realize upon or exhaust any col-

lateral security for Indebtedness, before enforcing this guaranty."

We see no ambiguities or inconsistencies between these two paragraphs. The two paragraphs, read together, simply state that the guarantors shall be liable for the whole indebtedness; and while Norwest need not first sue on the mortgage, if they do, the guarantors are only responsible for the deficiency.

■ We recognize that a written agreement supercedes any prior oral agreements or negotiations between the parties in the absence of any ambiguities. Parol evidence in this case is inadmissible to vary or contradict the terms of that agreement, or to clarify the intent of the parties. *See B.W.S. Investments v. Mid–Am Restaurants*, 459 N.W.2d 759 (N.D.1990); *National Bank of Harvey v. International Harvester*, 421 N.W.2d 799 (N.D.1988); *Graber v. Engstrom*, 384 N.W.2d 307 (N.D.1986).

## Illegality or Unconscionability

In view of the law at the time the guaranty agreements were entered into, it was neither illegal nor unconscionable for lenders to seek personal guaranties as additional mortgage security. Lenders were allowed to enforce personal guaranties after a mortgagor's default in lieu of foreclosing on the real property. *Heinsohn, supra; Mueller, supra.* Partners presented a list of alleged illegal and unconscionable provisions in the guaranties. However, Partners have not suffered harm by any of them. Because Partners' argument is based upon factual instances not existing in this case, we do not decide the merits of the allegations.

The judgment of the trial court is affirmed.

LEVINE, MESCHKE and JOHNSON, JJ., concur.

JOHNSON, Justice, concurring.

I accept the law and analysis set forth by Justice VandeWalle in this case. I write to express some concerns and raise possible warning flags as to the recent decisions and future decisions in this area. The

fields of commercial law, business organizations, and property law require special attention to predictability. Major structures are created, complex business and professional entities are established, and ongoing commercial relationships are formed in reliance upon legal principles as they are enunciated by the courts.

The doctrine of *stare decisis* was no doubt essential to the development of the British commercial empire. If each judge had made a new and independent analysis of each problem of property or commercial law, the business relationships would have been chaotic. Reliance upon precedent has special significance in these areas.

By reversing *Mandan Security Bank v. Heinsohn*, 320 N.W.2d 494 (1982), *First Interstate Bank of Fargo v. Larson*, 475 N.W.2d 538 (1991) created uncertainties in established business relationships, even though its application was made prospective only. What is to happen to the transactions vested in reliance on the previous decision? Can these transactions be modified, based upon changing circumstances, without invalidating the original guaranty obligations upon which the parties relied?

We should not be quick to denigrate the independent status of the many partnerships which operate as very separate entities and organizations in our business and professional world. To characterize these as merely unincorporated associations is to confuse an amorphous group of persons with sophisticated business organizations.

Care must be taken to assure that *stare decisis* is not applied based only upon the views of a given group of judges at a given point in time. Change in the composition of the appellate courts should not create uncertainty in the law—particularly as it applies to these areas where the law is an essential part of the commercial equation.

ERICKSTAD, C.J., concurs.