**AMERICANA STATE BANK, Respondent,**

v.

**Marilyn JENSEN, Defendant,**

**Ida Rasmussen, Appellant.**

**No. C5–84–195.**

Court of Appeals of Minnesota.

Aug. 21, 1984.

Craig S. Nelson, Tuveson, Goldman & Nelson, Chartered, Albert Lea, for respondent.

Randel I. Bichler, Joseph R. Gadola Law Office, Wells, for appellant.

Heard, considered and decided by PARKER, P.J., and FOLEY, and HUSPENI, JJ.

## OPINION

PARKER, Judge.

After Americana State Bank (bank) repossessed and sold the car securing a note signed by Marilyn Jensen, it sued her and the note's guarantor, Ida Rasmussen, for the deficiency on the note. Jensen did not defend herself in this action. Rasmussen appeals from a judgment for the bank, arguing that she was released from liability on the note under Minn.Stat. § 325G.22 (1982), a consumer anti-deficiency statute, when the bank sold the collateral securing the note. We agree and reverse the trial court.

## FACTS

In order to finance the purchase of a 1976 Chevrolet automobile, Marilyn Jensen signed a combination installment note, security agreement and disclosure statement on June 5, 1981, agreeing to pay Americana State Bank $2,750.34, excluding finance charges. The bank took a security interest in the car, which had a fair market value of about $2,500 at that time. Ida Rasmussen, Jensen's mother, signed a guaranty and endorsement on the back of the note.

In November 1981 the car was damaged in an accident. At that time, Jensen had not insured the car as she had agreed, and she had made no payments. There was no testimony at trial regarding the cause of the accident.

The bank repossessed the car in December 1981 and obtained estimates of $611.83 and $767.17 to repair the damages. After advertising the car in the local newspaper, the bank sold the car, in its damaged state, to the only bidder for $350.

In February 1982 the bank commenced this action against Jensen and Rasmussen, seeking a judgment of $2,750.34 on the note, less the $350 sale price of the car. Following trial without a jury, a judgment in the amount of $2,400.34 was entered against Rasmussen in December 1983. Judgment was separately entered against Jensen, who failed to defend herself. Subsequently, the trial court amended its judgment (after this appeal had commenced) to hold Jensen and Rasmussen jointly and severally liable in the sum of $2,400.34. Rasmussen appeals from the judgment of December 1983.

## ISSUE

Does Minn.Stat. § 325G.22 relieve a guarantor of liability on a note signed as part of a consumer credit transaction where the creditor has repossessed and sold the collateral securing the note?

## DISCUSSION

Appellant Rasmussen signed the following guaranty and endorsement on the back of the combination installment note/security agreement executed by defendant Jensen:

For value received, the undersigned (if more than one, jointly and severally) hereby unconditionally guarantees the prompt payment of the within note (and all extensions and renewals thereof) and of all sums stated therein to be payable,

when due, at maturity, by acceleration or otherwise, and hereby consent(s) that from time to time, without notice to the undersigned, said note may be extended or renewed in whole or in part for any period (whether or not longer than the original period of the note), and any related right or security otherwise dealt with and any of the actions mentioned in said note may be done, all without affecting the liability of the undersigned. The release of any party liable or in respect of said note shall not release any other such party. Each signature hereto is intended also as an endorsement of the within note, and each of the undersigned hereby waives presentment, demand for payment and notice of non-payment and of protest and any and all other notices and demands whatsoever.

Rasmussen signed the note as an accommodation party.

An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

Minn.Stat. § 336.3–415(1) (1982). The bank asserts that Rasmussen, as an accommodation party, must pay the overdue note, since Jensen has failed to pay.

"Payment guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party.

Minn.Stat. § 336.3–416 (1982).

Rasmussen contends that Minn.Stat. § 325G.22 (1982) bars the bank from pursuing a deficiency judgment in this consumer credit transaction, since it elected its remedy by repossessing the collateral securing the note. Minn.Stat. § 325G.22 states:

**RESTRICTIONS ON DEFICIENCY JUDGMENTS.**

Subdivision 1. *If the* seller or *lender repossesses* or voluntarily accepts surrender of *personal property in which he has a security interest* arising out of a consumer credit transaction and the aggregate amount of the credit extended

in the transaction was $3,000 or less, *the buyer is not personally liable* to the seller or lender *for the unpaid balance of the debt* arising from the consumer credit transaction, and the seller or lender is not obligated to resell the collateral.

Subd. 2. The buyer may be liable in damages to the seller or lender if the buyer has wrongfully damaged the collateral or wrongfully failed to make the collateral available to the seller or lender.

Subd. 3. If the seller or lender elects to bring an action against the buyer for a debt arising from a consumer credit transaction, when under this section he would not be entitled to a deficiency judgment if he repossessed the collateral, and obtains judgment (a) he may not repossess the collateral, and (b) the collateral is not subject to levy or sale on execution or similar proceedings pursuant to the judgment.

(Emphasis supplied).

### Trial Court Conclusion

■ The trial court concluded that Rasmussen cannot raise a defense of the debtor in this case because Rasmussen's guaranty is a contract that is enforceable separate from the underlying note. The court cites the North Dakota case of *Bank of Kirkwood Plaza v. Mueller*, 294 N.W.2d 640 (N.D.1980), to support this conclusion.

In *Mueller* a North Dakota corporation signed notes which it secured with three mortgages. In addition, four individuals signed a continuing guaranty agreement with the bank in which they individually and unconditionally guaranteed the payment of "any obligation" between the bank and the corporation up to the amount of the executed notes. After the corporation defaulted, the bank brought suit against the guarantors and also foreclosed the mortgages, which it then purchased at the sheriff's sale.

The North Dakota Supreme Court noted:

The action in the instant case against the guarantors * * * *is not based on obligations imposed by the notes* or the

mortgages given to secure the notes, *but on a separate and distinct contract of guaranty.*

*Id.* at 643 (emphasis supplied). Therefore, the court concluded that the state's mortgage anti-deficiency statute did not shield the guarantors from liability on their absolute guarantee. The guarantors were ordered to pay the sums due under the guaranty agreement, while the bank was ordered to assign all of its interest in the property to the guarantors.

*Mueller* does not control the instant facts. First, the guaranty here was not separate and distinct from the obligations imposed by the note and security agreement as was the guaranty in *Mueller.* Instead, the guaranty here is limited to "prompt payment of the within note," and there is no indication that this guaranty is a contract distinct from the note. The guarantor of a small consumer credit transaction is unlikely to receive underlying consideration sufficient to give vitality to his separate guaranty as the guarantors in most commercial transactions, like *Mueller,* might receive.

Second, the guarantor here raises as a defense a consumer anti-deficiency statute limited to secured loans of $3,000 or less, while in *Mueller* the guarantors attempted to insulate themselves from liability by asserting a mortgage antideficiency statute. These statutes serve different purposes. The class of transactions affected by the consumer credit anti-deficiency statute is much narrower than that affected by a mortgage anti-deficiency statute.

The structure of the lending transaction, the parties involved, the interrelationship of the loan, mortgages and guaranty, as well as the actual words of the guaranty, are sufficient to distinguish *Mueller* from the facts in the instant case.

### Evaluation of Rasmussen's Claim

If Minn.Stat. § 325G.22 does not apply, the bank would have the right under the commercial code to collect on the note from the guarantor once the debtor defaulted, Minn.Stat. § 336.3–416, and to also repossess the collateral. *See* Minn.Stat. § 336.-9–503 (1982); *Sheet Metal Workers Local No. 76 Credit Union v. Hufnagle,* 295 N.W.2d 259, 261 (Minn.1980). If the bank had sued only on the note, the guarantor would have to pay the note but would then be entitled to obtain the collateral and resell it to offset her losses or to sue the debtor. *See* Minn.Stat.Ann. § 336.3–415, UCC Comment 5 (West 1966); Minn.Stat. § 336.3–415(5)).

If Minn.Stat. § 325G.22 applies, the creditor's rights are limited; the creditor must elect its remedy. · The creditor can either (a) repossess the collateral and sue the debtor for any wrongful damage to the collateral, *or* (b) sue the debtor on the note. Here, the creditor admitted it was not aware of this statute when it repossessed the collateral.

■ As an accommodation party or surety on the note, Rasmussen is entitled to raise contract defenses against the bank. The comments to § 336.3–415 state:

> The subsection [1] recognizes the defenses of a surety in accordance with the provisions subjecting one not a holder in due course to all simple contract defenses, as well as his rights against his principal after payment.

Minn.Stat.Ann. § 336.3–415, UCC Comment 1. White and Summers note that "traditionally and universally," the surety has been entitled to raise the principal's contractual defenses, such as failure of consideration, in order to avoid liability on a note. *See* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 13–17, at 532 (2d ed. 1980). "Since the surety is nothing more than a back-up for the principal debtor, his liability should be no greater than the contractual liability of his principal." *Id.*

We agree with Rasmussen that she should be able to assert the defense of the debtor in this case. Legislative history reveals that Minnesota legislators were particularly interested in protecting consumers from a deficiency judgment in a case such as this. During Senate floor discussions of

this bill, Senator Jack Davies explained that one purpose of this bill was to prevent the situation where a creditor repossesses a car, sells it for a low price, then is able to obtain a deficiency judgment for the difference even though the car's price goes up when subsequently resold on the market. *Hearing on Senate Bill No. 147*, March 31, 1977, Statement of Senator Jack Davies (Legislative Reference Library tape). Here, we note the collateral had a fair market value of $2,500 at the time of the loan. Six months later, after the car sustained just over $700 damage, the creditor sold it for $350.

■ Since the legislative intent was clearly to prevent a deficiency judgment where collateral was repossessed and sold by a creditor in a small consumer credit transaction, the creditor's election either to repossess the collateral or to sue on the note should also apply to protect a guarantor such as Rasmussen. Otherwise, the creditor who was able to obtain a deficiency judgment from the guarantor would lack incentive to obtain a fair market price for repossessed collateral. This would leave the guarantor with little recourse.

If the creditor is forced to elect its remedy and decides to pursue the debtor and/or guarantor on the note, the guarantor would then have the right to repossess and sell the collateral to offset her losses. *See* Minn.Stat.Ann. § 336.3–415, UCC Comment 5. Since the bank has already elected to repossess the car, it cannot now pursue Rasmussen, the guarantor, for the deficiency. However, the bank is entitled to sue Jensen in a separate tort action for damage to the collateral. *See* Minn.Stat. § 325G.22, subd. 2.

## DECISION

Respondent bank is not entitled to a deficiency judgment against appellant guarantor on a note where the bank has elected its remedy under Minn.Stat. § 325G.22 by repossessing the collateral securing the transaction.

Reversed.