SHAKOPEE FORD, INC., Respondent,

v.

Thomas WITTENBERG, Appellant.

No. C5–85–420.

Court of Appeals of Minnesota.

July 9, 1985.

Trevor R. Walsten, Shakopee, for respondent.

Paul W. Onkka, Jr., Carver, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Appellant Thomas Wittenberg purchased a car on credit from respondent, Shakopee Ford, Inc., and he defaulted on the loan agreement. Respondent repossessed the car, sold it, and sued appellant to recover a deficiency judgment. Appellant claims the action is defeated by a consumer protection statute. Minn.Stat. § 325G.22, subd. 1 (1980) precludes deficiency judgments aris-

ing out of a consumer credit transaction where:

the aggregate amount of the credit extended in the transaction was $3,000 or less * * *.

The trial court held respondent was entitled to a deficiency judgment. We reverse.

## FACTS

In June 1980, appellant bought from respondent a 1977 station wagon for $3,388. With miscellaneous charges for taxes and registration, and after credit for a down payment and a trade-in, appellant owed $2,972.57. He executed a retail installment contract and security agreement for this balance. The finance charges for the period of the contract totaled $1,296.31.

Appellant defaulted under the contract. In March 1982, respondent repossessed the car. The remaining amount of principal and interest due under the contract was $2,287.47, and respondent sold the car for $1,100. Respondent then demanded payment of the deficiency plus $106 expenses incurred in repossessing and selling the car. Appellant refused to pay.

In January 1983, respondent sued to recover a deficiency judgment of $1,293.47. Appellant asserted numerous defenses and specifically claimed that the action was barred by Minn.Stat. § 325G.22.

On stipulated facts, the trial court held that the action was not barred by the statute and that respondent was entitled to a deficiency judgment.

## ISSUE

Is a finance charge included in the determination of "the aggregate amount of the credit extended" under Minn.Stat. § 325G.22, subd. 1?

## ANALYSIS

Section 325G.22, subd. 1 (1980) provides:

If the seller or lender repossesses or voluntarily accepts surrender of personal property in which he has a security interest arising out of a consumer credit transaction and the aggregate amount of the credit extended in the transaction was $3,000 or less, the buyer is not personally liable to the seller or lender for the unpaid balance of the debt arising from the consumer credit transaction, and the seller or lender is not obligated to resell the collateral.

Neither the Minnesota appellate courts nor the legislature have interpreted the statutory reference to an "aggregate amount of the credit extended." [1]

1. Words and phrases should be construed "according to their common and approved usage." Minn.Stat. § 645.08(1) (1980).

The amount of credit commonly means the amount lent. It is the amount of money or the value of goods in the hands of a borrower. Thus, for example, a credit line is defined as "that amount of money or merchandise which a banker or supplier agrees to supply to a person on credit." Black's Law Dictionary 332 (5th ed. 1979).

The finance charge represents the cost for obtaining the credit. Credit extended and the charge for obtaining the credit are distinguishable and cannot be lumped together for purposes of determining "the aggregate amount of the credit extended" under Minn.Stat. § 325G.22.

The aggregate amount of credit extended in a consumer credit transaction is the principal amount which is necessary to consummate the sale. In this case appellant needed a loan in the amount of $2,972.57 to purchase respondent's car.

2. It is also presumed that the legislature intends a statute "be effective and certain." Minn.Stat. § 645.17(2) (1980). Excluding finance charges from computation of the amount of credit results in a

---

1. In *Americana State Bank v. Jensen,* 353 N.W.2d 652 (Minn.Ct.App.1984), we dealt with the anti-deficiency statute where the amount in issue was $2,750.34, excluding finance charges, but we did not define the amount of credit. The opinion also made reference to the fact that the consumer anti-deficiency statute was limited to secured "loans" of $3,000 or less. *Id.* at 655.

clear application of section 325G.22. The amount can be determined with certainty even if the total finance charge is not specified in the retail agreement.

 If payment is accelerated because of default, Minnesota law does not permit the creditor to retain unearned interest or finance charges. *See Griffith v. Superior Ford*, 577 F.2d 455, 460 (8th Cir.1978). If the finance charge was considered part of the "aggregate amount of the credit," the timing of the default would determine the applicability of Minn.Stat. § 325G.22. The finance charge may also be susceptible to change if the consumer chooses to prepay part of a loan and then defaults.

If finance charges were considered part of the "aggregate amount of the credit," numerous inequities could result. Several consumers could buy the same item at the same purchase price, and some among them might not be protected by the deficiency statute, depending on the method, duration and terms of the financing secured by each consumer.

3. Finally, Section 645.16 (1980) provides:

When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

(1) the occasion and necessity for the law;

*    *    *    *    *    *

(3) the mischief to be remedied;

(4) the object to be attained;

*    *    *    *    *    *

(6) the consequences of a particular interpretation.

The consumer anti-deficiency statute was intended to prevent a creditor from obtaining a deficiency judgment where collateral was repossessed and sold in a small consumer credit transaction. *Americana State Bank*, 353 N.W.2d at 656.

In *Americana State Bank*, we discussed the history behind the implementation of Minn.Stat. § 325G.22.

Legislative history reveals that Minnesota legislators were particularly interested in protecting consumers from a deficiency judgment in a case such as this. During Senate floor discussions of this bill, Senator Jack Davies explained that one purpose of this bill was to prevent the situation where a creditor repossesses a car, sells it for a low price, then is able to obtain a deficiency judgment for the difference even though the car's price goes up when subsequently resold on the market. *Hearing on Senate Bill No. 147*, March 31, 1977, Statement of Senator Jack Davies (Legislative Reference Library tape).

Section 325G.22 is remedial legislation which should be broadly construed to implement the legislature's intent and purpose. *Cf. Dougherty v. Hoolihan, Neils, and Boland, Ltd.*, 531 F.Supp. 717, 721 (D.Minn.1982). If finance charges were included in the amount of credit, it would exclude many small consumer purchases from the intended protection of the statute.

## DECISION

The trial court erred in holding that a finance charge is part of "the aggregate amount of the credit extended" under Minn.Stat. § 325G.22, subd. 1.

Reversed.